IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BILLY D. SCHIMMEL,
     Petitioner,

vs.                           Case No.:  3:09cv534/LAC/EMT

KENNETH S. TUCKER,[1]
     Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 and supporting memorandum (docs. 9, 10).  Respondent filed an answer and relevant portions of the state court record (doc. 37).  Petitioner filed a reply (doc. 59).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

     The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 37).[2]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 00-2456, by a third amended information with fifty-four (54) criminal offenses,

---

     [1] Kenneth S. Tucker succeeded Edwin G. Buss as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

     [2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 37).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

including, unlawfully conducting a business enterprise, organized fraud, grand theft, workers' compensation fraud, destruction or tampering with evidence to impair an investigation, and tax fraud (Ex. B at 98–120). Petitioner was charged in Case No. 00-5280 with one count of possession of a firearm by a convicted felon. Petitioner waived his right to a jury trial in both cases (*id.* at 344, 1069). At the close of the evidence during the bench trial, the State announced a nolle prosequi of all but one of the grand theft charges (Counts 3, 6–10, 14–19, 23–55). The court found Petitioner guilty as charged on all but one of the remaining counts, that is, racketeering (Count 1), organized fraud (Counts 2, 22), workers' compensation fraud (Counts 56, 57, 58), theft of sales tax monies (Count 64), tampering with evidence (Counts 66, 67), and possession of a firearm by a convicted felon; however, the court acquitted Petitioner of the remaining grand theft count (Count 20) (Ex. B at 1078–81, 1108–13, 1572–80). Petitioner was adjudicated guilty and sentenced as a habitual felony offender as follows in Case No. 00-2456: concurrent terms of twenty (20) years of imprisonment followed by ten (10) years of probation on Counts 1, 2, and 22, with jail credit of 324 days; concurrent terms of five (5) years of imprisonment on Counts 66 and 67, to run concurrently with the sentences on Counts 1, 2, and 22 and with jail credit of 324 days; a term of ten (10) years of probation on Count 64, to run concurrently with the probation imposed on Counts 1, 2, and 22; and concurrent terms of five (5) years of probation on Counts 56, 57, and 58, to run concurrently with the probation imposed on Counts 1, 2, 22, and 64 (Ex. B at 1237–1543, 1551–80; Ex. I at 1022–30). Petitioner was adjudicated guilty and sentenced as a habitual felony offender in Case No. 00-5280 to five (5) years of imprisonment, to run concurrently with the prison sentences on Counts 1, 2, 22, 66, and 67 in Case No. 00-2456 (*id.*).

Petitioner appealed the judgment and sentence in Case No. 00-2456 to the Florida First District Court of Appeal ("First DCA"), Case No. 1D04-1143 (Ex. B at 1823, Exs. E, F, G).[3] On October 30, 2006, the First DCA affirmed in part, reversed in part, and remanded the case with instructions that Petitioner be allowed a hearing as to the amount of the public defender lien imposed

---

[3] The court is omitting the procedural history of Case No. 00-5280 from the Background and Procedural History section of this Report. Petitioner already sought relief from that conviction in a § 2254 action. *See* Schimmel v. McNeil, Case No. 3:07cv521/MCR/EMT. That petition was denied on the merits. *Id.*, Docs. 26, 29. Therefore, he is barred from filing a successive petition as to that conviction, unless he first obtains authorization from the Eleventh Circuit Court of Appeals. *See* 28 U.S.C. § 2244(b).

by the trial court (Ex. H).  <u>Schimmel v. State</u>, 940 So. 2d 584 (Fla. 1st DCA 2006) (unpublished).
The mandate issued November 15, 2006.  <em>Id.</em>

On May 9, 2007, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850
of the Florida Rules of Criminal Procedure (Ex. I at 1–57).  The state circuit court dismissed the
motion without prejudice on May 22, 2007, for Petitioner's failure to comply with the oath
requirement of Rule 3.850 (<em>id.</em> at 529–30).  On June 25, 2007, Petitioner filed an amended Rule
3.850 motion (<em>id.</em> at 531–74).  The state circuit court summarily denied the motion on July 17, 2008
(<em>id.</em> at 994–1015).  Petitioner appealed the decision to the First DCA, Case No. 1D08-4601 (Ex. J).
The First DCA affirmed the decision per curiam without written opinion on August 4, 2009, with
the mandate issuing October 6, 2009 (Exs. L, M).  <u>Schimmel v. State</u>, 18 So. 3d 534 (Fla. 1st DCA
2009) (Table).

On January 25, 2010, Petitioner filed a motion to correct sentence, pursuant to Rule 3.800(a)
of the Florida Rules of Criminal Procedure (Ex. N at 1–8).  The state circuit court summarily denied
the motion on May 3, 2010 (<em>id.</em> at 9–111).  Petitioner appealed the decision to the First DCA, Case
No. 1D10-3330 (Ex. O).  The First DCA affirmed the decision per curiam without written opinion
on August 31, 2010, with the mandate issuing September 28, 2010 (Exs. P, Q).  <u>Schimmel v. State</u>,
43 So. 3d 698 (Fla. 1st DCA 2010) (Table).  The First DCA denied Petitioner's motion to recall the
mandate and motion for rehearing on November 2, 2010 (Ex. R).

On June 22, 2010, Petitioner filed another Rule 3.850 motion and subsequently amended the
motion (Ex. S at 1–16, 74–93).  The state circuit court summarily denied the motion on August 12,
2010 as untimely and successive (<em>see</em> Doc. 37 at 2).  Petitioner appealed the decision to the First
DCA, Case No. 1D10-5151 (Ex. T).  The First DCA affirmed the decision per curiam without
written opinion on December 8, 2010, with the mandate issuing February 1, 2011 (Ex. U).
<u>Schimmel v. State</u>, 51 So. 3d 467 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on December 2, 2009 (doc. 1 at 6).
Respondent concedes the habeas petition is timely (doc. 37 at 3–4).

## II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[4] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.     EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

---

[5]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by

_____

[6] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[7]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and

---

[7] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[8]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One:  "The cumulative presentation of evidence of collateral acts, which related to charges that were subsequently nolle prossed, served to erroneously allow the evidence to become a feature of the trial & prejudiced the Petitioner's right to a fair trial."

---

[8] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner alleges the trial court abused its discretion by admitting collateral crime or "Williams rule" evidence (doc. 9 at 7–10; doc. 10 at 3–9).[9]  Petitioner states the charges included several counts of grand theft by false pretenses, fraud, or deception on business vendors and suppliers by submitting false information about the credit history of Petitioner's businesses to obtain products from those suppliers (Counts 3, 6–9, 14–19), and several counts of grand theft of customers by failing to construct or deliver sheds, carports, and other similar structures for which the customers had paid (Counts 23–55).  Petitioner asserts the State presented evidence relating to those crimes in the form of testimony from suppliers and customers (id.).  He asserts at the close of the evidence, the State announced a nolle prosequi as to Counts 3, 6–9, 14–19, and 23–55, but argued that the conduct and evidence underlying those counts were predicate acts for the RICO and organized fraud charges in Counts 1, 2, and 22  (id.).  Petitioner states some of the conduct alleged in Counts 3, 6–9 and 14–19 occurred outside the statute of limitations period for grand theft (id.).  He contends the evidence underlying the nolle prossed counts became feature of trial, and its probative value was outweighed by its prejudicial effect, depriving him of a fair trial (id.).  He argues the nolle prosequi precluded a determination of which charges the finder of fact relied upon in reaching the verdict of guilty on the organized fraud counts (id.).  In Petitioner's supporting memorandum, he argues the prejudicial effect of allowing the collateral crime evidence "is demonstrated by a Blakely analysis" and references the constitutional holdings of Blakely v. Washington, 542 U.S. 296 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) (doc. 10 at 7–9).  Petitioner states he exhausted this claim by raising it on direct appeal of his conviction (doc. 9 at 4; doc. 10 at 9).

Respondent contends Ground One of the instant petition does not present a federal claim (doc. 37 at 10).  Respondent contends Petitioner's argument duplicates the argument in his state appellate brief and presents only a claim of evidentiary error based on state law, with a completely unrelated discussion of the Apprendi line of cases (id.).  Respondent further contends Petitioner

---

[9] Williams v. State, 110 So. 2d 654 (Fla. 1959).  Under the Williams rule, evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character.  Section 90.404(2)(a), Florida Statutes, (1983), codified the ruling in Williams and lists the purposes for which such evidence is deemed to be admissible:  proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Buenoano v. State, 527 So. 2d 194, 197 (Fla. 1988).

failed to exhaust this claim, because he failed to present the federal nature of the claim to the trial court or on direct appeal (*id.* at 5–6). Respondent argues Petitioner presented the state courts with a claim of state law error regarding the admission of alleged collateral crime evidence, and although he included a "nonsensical reference" to the <u>Apprendi</u> line of cases on direct appeal, the reference failed to alert the state courts to the federal nature of his claim (*id.*). Therefore, the claim is unexhausted and procedurally barred (*id.* at 5–6, 7–8).

In Petitioner's appellate brief on direct appeal, his first claim of error asserted the cumulative presentation of collateral evidence of similar acts, which related solely to charges that were subsequently nolle prossed, served to erroneously allow the collateral evidence to become a feature of trial and prejudiced his right to a fair trial (Ex. E at 16, 17–21). Petitioner argued that the evidence supporting the nolle prossed charges was unduly prejudicial in that it predisposed the mind of the fact finder, in this case, the trial judge, to believe he was guilty of the organized scheme to defraud vendors and suppliers charged in Count 2 (*id.* at 20–21). He further argued the evidence was unduly prejudicial because it prevented a determination of which conduct the trial judge relied upon in reaching the guilty verdict on Count 2 (*id.*). Petitioner argued only a state law basis for this claim of alleged trial error (*id.* at 17–21). Then at the end of his argument, he stated, "prejudice is demonstrated by a *Blakely* analysis" and launched into a seven-page discussion of the Supreme Court's analysis of constitutional challenges to criminal sentences and state sentencing schemes in the <u>Apprendi</u> line of cases (*id.* at 21–27).[10]

The undersigned concludes that Petitioner's claim in Ground One, that the admission of collateral crime evidence deprived him of a fair trial, presents purely a state law issue. His including a discussion of completely irrelevant federal law in his argument of Ground One does not convert it into a federal claim. Therefore, Petitioner's claim is not cognizable in federal habeas. *See* 28 U.S.C. § 2254 ("a district court shall entertain an application for a writ of habeas corpus in behalf

---

[10] In those cases, the Supreme Court held that the Fifth and Sixth Amendments require that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *See* <u>Apprendi</u>, 530 U.S. at 490; <u>Ring v. Arizona</u>, 536 U.S. 584 (2002); <u>Blakely</u>, 542 U.S. 296 (2004).

of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

Additionally, Petitioner did not fairly present a federal claim to the state courts.  His including a discussion of irrelevant federal law in his appellate brief did not fairly alert the state court that he was raising a federal claim as to the admission of alleged collateral crime evidence at trial.  Therefore, the undersigned concludes Petitioner did not exhaust a federal claim in the state courts.  Furthermore, any future attempt to exhaust state remedies would be futile under Florida law, because Petitioner may not take a second appeal of his conviction.  Moreover, any attempt to raise the claim in a successive Rule 3.850 motion would be properly subject to dismissal under Rule 3.850(c) or (f).  Therefore, Ground One is procedurally defaulted for federal habeas purposes.  *See* Bailey, 172 F.3d at 1303.

As previously noted, a procedural default may be excused through a showing of cause for the default and prejudice arising therefrom, *see* Coleman, 501 U.S. at 750, or a demonstration that failure to consider the claim will result in a "fundamental miscarriage of justice," *see* Murray, 477 U.S. at 495–96.  In the instant case, Petitioner has not shown cause for his failure to exhaust the claim he asserts in Ground One.  Moreover, he has not alleged the existence of new reliable evidence demonstrating he is actually innocent (that is, factually innocent) of the charges.  Therefore, he has failed to show that this court's failure to review his claim will result in a fundamental miscarriage of justice.  *See* Schlup, 513 U.S. at 327.  For these reasons, Petitioner is not entitled to federal review of Ground One.

Finally, even if Ground One presents a federal claim based upon Petitioner's argument that the admission of collateral crime evidence violated Apprendi and its progeny, Petitioner is not entitled to habeas relief.  As previously noted, Apprendi clearly established the principle that the Sixth and Fourteenth Amendments require that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  *See* Apprendi; Ring; Blakely.  In the instant case, Petitioner failed to show that any of his

sentences exceeded the prescribed statutory maximum.[11]   Further, he failed to show that the admission of alleged collateral crime evidence at trial violated the constitutional principles announced in <u>Apprendi</u>.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

     B.    <u>Ground Two:  "Fundamental error—court erred in the evidence of vendor fraud occurring within the statute of limitations was [sic] legally insufficient to prove the element of $50,000.00 value of property obtained by fraud essential to conviction of a first degree felony."</u>

Petitioner contends the trial court lacked jurisdiction to award restitution to the victims identified in the grand theft counts (the vendors, suppliers, and customers of Petitioner's business), because those counts were nolle prossed by the State (Counts 3, 6–9, 14–19, 23–55) (doc. 9 at 10–11).  He further contends that in light of the nolle prosequi of those counts, the trial court erred by considering evidence of those victims' property losses in determining that the State satisfied the $50,000.00 property value element of each first degree felony organized fraud count, Count 2 (organized fraud of vendors and suppliers) and Count 22 (organized fraud of customers) (*id.*).  In Petitioner's supporting memorandum, he presents an additional argument of trial court error with regard to the property loss element, that is, that the court erred by considering evidence of the property losses of certain victims, where the acts of fraud as to those victims occurred outside the statute of limitations period for prosecution of those acts (doc. 10 at 10–14).  Petitioner contends the trial court's convicting him of organized fraud and awarding restitution violated his rights to due process, a fair trial, and equal protection (*id.*).  He asserts he exhausted this claim by raising it on direct appeal (doc. 9 at 5).  He additionally references his Rule 3.850 motion (doc. 10 at 13).

Respondent contends Ground Two of the instant petition presents only alleged errors of state law, not federal constitutional error (doc. 37 at 10, 12).  Respondent further contends Petitioner failed to exhaust any federal claim as to this ground, because he failed to present the federal nature

---

[11] Petitioner's sentence on each of the first degree felonies (Counts 1, 2, and 22) was twenty (20) years of imprisonment followed by ten (10) years of probation, which does not exceed the statutory maximum of thirty (30) years of imprisonment.  *See* Fla. Stat. § 775.082(3)(b).  His sentence on the second degree felony (the single count in Case No. 00-5280-CF) was five (5) years of imprisonment, which does not exceed the statutory maximum of fifteen (15) years of imprisonment.  *See* Fla. Stat. § 775.082(3)(c).  His sentence on each of the third degree felonies (Counts 56, 57, 58, 64, 66, and 67), which ranged from five (5) years of imprisonment (Counts 66 and 67), ten (10) years of probation (Count 64), and five (5) years of probation (Counts 56, 57, and 58), did not exceed the statutory maximum of five (5) years of imprisonment.  *See* Fla. Stat. § 775.082(3)(d).

of the claim to the state courts on direct appeal, which was the procedurally proper vehicle for doing so (*id.* at 6–7, 12).  Therefore, the claim is unexhausted and procedurally barred (*id.* at 6–8).

The state court record shows that on direct appeal of his conviction, Petitioner's second claim of error asserted that the evidence of vendor fraud occurring within the statute of limitations was legally insufficient to prove the element of $50,000.00 (value) of the property obtained by fraud essential to convict of a first degree felony as to the organized fraud counts (Ex. E at 16–17, 35–39). Petitioner argued the State presented evidence of time-barred vendor fraud and consumer fraud, and the trial court erred by considering the property losses resulting from those instances of fraud in determining that the State satisfied the $50,000.00 property loss element of each organized fraud count (*id.*).  Petitioner did not cite in conjunction with the claim a federal source of law on which he relied or a case deciding such a claim on federal grounds, nor did he label the claim "federal" or otherwise indicate a federal law basis for his claim.  Therefore, Petitioner did not exhaust a federal claim in the state courts.

With regard to the additional arguments raised in Ground Two, (1) the trial court lacked jurisdiction to award restitution to the victims identified in the grand theft counts, because those counts were nolle prossed by the State, and (2) in light of the nolle prosequi of those counts, the trial court erred by considering evidence of the property losses of those victims in determining that the State satisfied the $50,000.00 property value element of each first degree organized fraud count, Petitioner did not raise those arguments on direct appeal, which was the proper vehicle for doing so. Further, in Petitioner's Rule 3.850 motion, he raised an ineffective assistance of trial counsel claim regarding counsel's failure to raise these issues in the trial court; however, Petitioner did not raise claims of trial court error (Ex. I at 570–72).  Moreover, as the state circuit court noted in its order denying Petitioner's Rule 3.850 motion (in which he raised only an ineffective assistance of counsel claim as to these issues), to the extent Petitioner was challenging the sufficiency of the evidence underlying his organized fraud convictions, such challenges should have been raised on direct appeal (*id.* at 1011–12, 1014).

Based upon the foregoing, the undersigned concludes that as to the three issues raised in Ground Two, Petitioner did not exhaust his state court remedies.  As discussed *supra*, Petitioner did not raise two of the issues on direct appeal, which was the procedurally proper vehicle for doing so,

and he raised the third issue only as a state law issue.  Further, Petitioner may not return to state court to properly present his federal claims, because a second direct appeal is unavailable. Therefore, Ground Two is procedurally barred.  Moreover, Petitioner failed to show he is entitled to federal review under the "cause and prejudice" exception or any other recognized exception to the procedural bar.  Accordingly, Petitioner is not entitled to federal review of Ground Two.

      C.     <u>Ground Three:  "Ineffective assistance of trial counsel—failure to employ services of professional investigator after costs were approved by the court, thus denying the Petitioner his right to effective counsel, due process & equal protection of the law."</u>

Petitioner contends trial counsel was ineffective for failing to retain an investigator to investigate the following information:  (1) Mr. Charles Dyer, the owner of a competing business, and Petitioner had been involved in numerous civil proceedings which resulted in injunctive orders being issued against Mr. Dyer; (2) Mr. Dyer had been under investigation for stealing Petitioner's Social Security Number, sending threatening letters, and stealing Petitioner's personal mail; (3) Mr. Dyer had a personal relationship with Ms. Teresa Sandler (the State's star witness) and Mr. Patrick Bish (Ms. Sandler's "significant other" and a contractor employed by Petitioner), and Mr. Dyer was paying Ms. Sandler and Mr. Bish for information regarding Petitioner's businesses; (4) on August 8, 1998, Ms. Sandler's car caught fire with Petitioner's business records inside it, and two weeks later, an arson was committed at Petitioner's office; after the office fire, it was discovered that Ms. Sandler's personal items had been removed from the office, and the business's computer hard drive was missing, along with numerous tools which were later discovered to have been pawned by Mr. Bish; (5) an unknown individual reported the office fire to a local news station before the fire department was notified; (6) Ms. Sandler had been embezzling funds from Petitioner's businesses; (7) the State attempted to hide evidence; (8) the State created victims to bolster its case; and (9) the State knew of Ms. Sandler's criminal activity and offered her qualified immunity from prosecution for her testimony (doc. 9 at 12–15; doc. 10 at 14–16).  Petitioner contends this information would have discredited Ms. Sandler's testimony, because it would have shown that she was motivated to implicate Petitioner in criminal activity to conceal her own crimes and those of Mr. Dyer and Mr. Bish, specifically, arson, burglary, and theft of Petitioner's business information, money, tools, and equipment (*id.*).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (doc. 37 at 17–21).

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would

interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Two in his Rule 3.850 motion (Ex. I at 542–43, 986–89).  The state circuit court analyzed all of Petitioner's ineffective assistance of counsel claims by assessing (1) whether counsel's performance was deficient, and (2) whether there is a reasonable probability that the outcome of the proceeding would have been different had counsel not been deficient (Ex. I at 996).  The state circuit court adjudicated this particular claim of ineffective assistance as follows:

> In his second ground, Defendant alleges that counsel was deficient in his failure to retain the services of a professional investigator.  In his June 2007 motion, Defendant alleges that he told his counsel that the "State was attempting to hide evidence" and "creating victims to bolster their case," and states generally that "any evidence that would have supported the defendant's position would have more than likely resulted in a favorable outcome of this trial."  The Court granted Defendant leave to amend this claim pursuant to <u>Spera v. State</u>, 971 So. 2d 754 (Fla. 2007) [when a defendant's initial post-conviction motion is determined to be facially insufficient, that is, it fails to sufficiently allege a cognizable claim for relief based upon the legal and factual grounds asserted, the trial court abuses its discretion when it fails to allow the defendant at least one opportunity to amend the motion], on May 3, 2008.
>
> In his amended motion, Defendant asserts that counsel should have had a professional investigator delve into the following information:  1) an individual, Charles Dyer, who owned a competing business, was under investigation for stealing Defendant's Social Security number, sending threatening letters, and stealing Defendant's personal mail; 2) Mr. Dyer had a personal relationship with the State's witness and co-defendant Teresa Sandler as well as Patrick Bish (a subcontractor of Defendant's with a criminal record), and Mr. Dyer was paying Sandler and Bish for information regarding Defendant's companies; 3) on August 8, 1998, Teresa Sandler's car, which contained business records from Defendant's business, caught fire, and subsequently, an arson was committed at Defendant's business.  After the office fire, it was discovered that Sandler's personal items had been removed from the office, and the office computer hard drive was missing, along with numerous tools, later discovered to have been pawned by Patrick Bish; 5) an unknown person reported the business fire to the local news station before the fire department was notified; and 6) Sandler and Bish were "co-conspirators" to cover up Sandler's embezzlement from Defendant's companies.  All of this information, Defendant asserts, would have provided Defendant with a viable defense "centered around Teresa Sandler and Patrick Bish conspiring to implicate the Defendant and his wife, Debbie Schimmel, to conceal their own illegal activities within the Schimmel businesses:  the theft of information, money, tool and equipment," or provided "at the very least impeachable evidence to discredit the testimony of Teresa Sandler."

The record clearly establishes that counsel was aware of Defendant's accusations against Mr. Dyer. Indeed, the Court had before it at trial significant information regarding Defendant's assertions concerning Charles Dyer.[FN 21]  For example, Ms. Sandler was questioned on cross-examination regarding Mr. Dyer and his activities.[FN 22]  Salesperson Doug Miller testified that he had contact with Mr. Dyer on a regular basis.[FN 23]  However, of the vendors and customers who were asked if Mr. Dyer had influenced them in any way, most had never heard of him, and none indicated that he caused them to lodge a complaint against the Schimmels.[FN 24]  One of the contractors who built sheds for Defendant, Darrell Scott, testified that after being fired from Defendant's business, he went to work for Mr. Dyer.[FN 25]  During Mr. Scott's testimony, Defendant's counsel argued vigorously in favor of the admission of certain testimony regarding Mr. Dyer, stating that "Charlie Dyer . . . has interjected himself into this case at every opportunity."[FN 26]  Furthermore, Mrs. Schimmel offered testimony as to the actions of Mr. Dyer, including that an injunction had been issued against him, and that his actions were in large part the cause of her business failures.[FN 27]

> [FN 21] The State, in fact, filed a motion in limine on April 26, 2002, requesting that the Court limit or exclude testimony regarding "acts or statement of Charles H. Dyer . . ." and "any civil actions brought by the Defendants, or entities with which the Defendants are to have been employed by or associated, against Charles Dyer . . .".  See Attachment 6.

> [FN 22] See Attachment 5, trial transcript excerpts, pages 875–879, 885–889.  On redirect, Ms. Sandler testified that none of the vendors at issue had ever mentioned Mr. Dyer.  See Attachment 5, trial transcript excerpts, pages 910–911.

> [FN 23] See Attachment 5, trial transcript excerpts, pages 1306–1308.  Much of Mr. Miller's testimony on this point was not allowed as hearsay, however, the Court cites to this testimony to demonstrate the counsel for Mrs. Schimmel was aware of the alleged actions of Mr. Dyer and attempted to bring this information forward.  Throughout trial, for the sake of judicial economy and to avoid repetition, the Court considered the cross-examination of witnesses by Mrs. Schimmel's counsel as relevant to Defendant as well.

> [FN 24–27] [references to excerpts from trial transcript]

Defendant has failed to show any specific additional information regarding Mr. Dyer that might have been uncovered by an investigator.  Further, even if all of Defendant's assertions are assumed to be true regarding Mr. Dyer, Defendant has

failed to demonstrate that such information regarding Mr. Dyer would have been of any relevance as it pertains to whether Defendant fraudulently obtained credit from vendors using shell corporations, defrauded consumers, tampered with evidence, or failed to properly remit sales tax or obtain appropriate worker's [sic] compensation coverage.

In addition, both the fire of Teresa Sandler's car, which was registered to Mrs. Schimmel,[FN 28] and the fire at Defendant's business were discussed at trial, as was the fact that the hard drive from Defendant's office was alleged to be missing.[FN 29]  Assuming it had been discovered by an investigator that Ms. Sandler's personal possessions were also missing from the office that caught fire, Defendant has failed to demonstrate that this information in any way exonerates him of responsibility for the charges of which he was convicted.  Similarly, Defendant has failed to demonstrate the relevance of the pawning of tools by Patrick Bish, or of the fact alleged by Defendant that "an unknown person reported the business fire to the local news station before the fire department was notified."[FN 30]  Further, Defendant's assertion that an investigator would have uncovered information that "Sandler and Bish were 'co-conspirators' to cover up Sandler's embezzlement from Defendant's companies" is based purely on speculation.  Even were this not the case, it cannot be ignored that the misdeeds of Ms. Sandler formed a large part of the defense case; in fact the State summarized the defense case during closing argument as follows:  "Teresa Sandler did it, and to the extent that we can't show that she [did] it, well, we didn't mean it."[FN 31]  Ms. Sandler also admitted various acts of wrongdoing during her testimony, but testified that she acted at the behest of Defendant in large part.[FN 32]  Defendant has failed to enumerate for this Court any concrete specific information, which would have been available to an investigator, and which would have demonstrated that Sandler and Bish were acting to embezzle funds to the detriment of the innocent Defendant, or that this information would have absolved Defendant of his role in defrauding consumers and vendors, tampering with evidence, and failing to properly remit sales tax or acquire proper worker's [sic] compensation coverage for his employees.  Furthermore, Defendant has failed to show any specific information which would have assisted the defense in impeaching Ms. Sandler to the extent that it would have rendered a different result at trial.[FN 33]

[FN 28, 29] [references to excerpts from trial transcript]

[FN 30] Furthermore, it appears counsel was already aware, even without the assistance of an investigator, that Mr. Bish had taken and pawned tools, as he requested that the Court take judicial notice of nine criminal case files pertaining to Mr. Bish, at least two of which relate to items taken from Backyard Sheds.  Fur purposes of ruling on the instant motion, the Court takes judicial notice of its

official records, contained in case numbers 99-3916CFA and 99-3917CFA.  See Attachment 7.  It was clear at trial, however, that Defendant required his counsel to take a different approach to his defense than that which counsel had originally planned.  See Attachment 5, trial transcript excerpts, pages 15, 1322.

[FN 31, 32] [references to excerpts from trial transcript]

[FN 33] The extent to which the testimony of Ms. Sandler was impeached is addressed infra.

(Ex. I at 1000–04).

Petitioner appealed the state circuit court's denial of his Rule 3.850 motion to the First DCA. The appellate court affirmed per curiam without written opinion.

The state court applied the correct legal standard to Petitioner's claim, thus precluding habeas relief under the "contrary to" prong of § 2254(d)(1) as to any ineffective assistance of counsel claim raised in the instant petition.  Petitioner must therefore demonstrate the state court's adjudication was based upon an unreasonable determination of the facts, or it was an unreasonable application of Strickland.  See 28 U.S.C. § 2254(d)(1),(2).

In its written order, the state circuit court included a factual summary of the evidence adduced at trial (Ex. I at 997–98).  That summary is supported by the trial transcript and included here as relevant to whether the state court reasonably determined that Petitioner failed to satisfy the Strickland standard.

As to the first count of organized fraud, the State presented evidence that, over the course of several years, Petitioner and his wife, co-defendant Debbie Schimmel, organized approximately twenty (20) corporations dealing primarily with the construction of sheds, carports, and garages (Ex. D at 83–89, 94–110).  The State presented evidence that Petitioner and his wife, often acting through their employee Teresa Sandler, submitted credit applications to vendors and suppliers throughout the southeastern United States, using their own corporations as credit references for each, and after Petitioner and his wife obtained materials on credit from vendors and suppliers, their corporations failed to pay the outstanding debts (id. at 198–252, 240–52, 268–91, 295–99, 301–18, 319–50, 351–60, 361–80, 380–99, 400–07, 413–40, 445–50, 452–57,459–72, 476–98, 505–25, 526–28,

528–51, 553–56, 558–600, 609–17, 619–30, 632–50, 653–79, 671–77, 702–60, 782–853, 914–26, 1064–84).

As to the second count of organized fraud, the State presented evidence that salespersons acting on Petitioner's instructions regularly obtained a fifty percent (50%) deposit on sheds purchased by consumers under the pretense that the deposit would be used for materials, but the customers never received the sheds for which they contracted and were consistently disregarded by the Schimmels and their employees, to the extent that some customers resorted to legal action to recover their deposits (*see* Ex. D at 914–26, 929–1063, 1088–1253).

As to the workers' compensation fraud count, the State presented evidence that Petitioner failed to procure appropriate workers' compensation coverage for his employees, despite the legal requirement to do so (Ex. D at 1359–1401, 1526–1619, 1658–1729).  As to the sales tax fraud count, the State presented evidence that Petitioner and his wife, by and through their employees, collected sales tax from customers who purchased sheds, but failed to remit those taxes to the State of Florida (*id.* at 929–1063, 1255–1303, 1768–1826, 2020–2138).

Finally, as to the two counts of tampering with evidence, the State presented evidence that in August of 1999, a fire occurred at a warehouse office owned by Petitioner and his wife; prior to that fire, Petitioner asked Teresa Sandler to copy the customer files from the computer in that office and gather the customer agreements held at the office; Petitioner also requested that Ms. Sandler delete prior customer records from her copy of the computer database; and after the fire, the hard drive of the computer in the burned office could not be located (Ex. D at 831–41, 243–45).  The State also presented evidence that the day after the Florida Department of Law Enforcement served a search warrant in November of 1999, Petitioner and his wife were seen shredding and burning documents at their home, and Petitioner's wife was heard to remark, "I don't believe what they missed." (*id.* at 832–44).

The trial transcript also shows that the trial judge (the fact finder in this case) heard evidence, through Ms. Sandler's testimony, that Charles Dyer had published and distributed at least one newsletter containing negative information about the Schimmels and their businesses in an attempt to "poison the customer well," and Dyer called and harassed at least one of the Schimmels' employees (Ex. D at 875–877, 885–888).  Ms. Sandler also testified that none of the vendor victims

had ever mentioned Mr. Dyer (*id.* at 910–11).  In addition, both the fire of Teresa Sandler's car, which was registered to Mrs. Schimmel, and the fire at Petitioner's business were discussed at trial, as was the fact that the computer hard drive from Petitioner's office was alleged to be missing (*id.* at 783–87, 832–44, 2243–45).  Also at trial, Ms. Sandler admitted various acts of wrongdoing, but testified that she acted at the behest of Petitioner in large part (*id.* at 702–60, 782–913).

Petitioner failed to show that an investigation into the other "bad acts" of Mr. Dyer, Mr. Bish, or Ms. Sandler identified by Petitioner would have produced admissible evidence not previously known to defense counsel.  He also failed to show that any of this additional information would have  supported a defense to any of the charges, or that it could have been used to impeach Ms. Sandler beyond the impeachment accomplished by the defense (*id.* at 854–905). Therefore, the state court's denial of Petitioner's ineffective assistance of counsel claim was not an unreasonable application of <u>Strickland</u>.

     D.    <u>Ground Four: "Ineffective assistance of trial counsel—failure to exhaust all available means to perfect pretrial discovery resulting in the defense being ill-prepared for trial, thus denying the Petitioner his right to effective counsel, due process, & equal protection of the law."</u>

Petitioner asserts documents were seized from him in November of 1999 and February of 2000 (doc. 9 at 16).  He states his trial began July 15, 2002 (*id.*).  Petitioner asserts his criminal case involved more than 80,000 documents (*id.*).  He alleges defense counsel made little or no effort to obtain the documents until less than sixty days prior to trial, with some requests made just thirty days prior to trial (*id.*).  Petitioner claims that defense counsel performed deficiently by failing to exhaust all means of discovery (*id.*).  He contends if counsel had timely obtained, reviewed, and investigated the contents of the documents, the outcome of his trial would have resulted in an acquittal (*id.* at 17).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (doc. 37 at 21–27).

     1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

     2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Three in his Rule 3.850 motion (Ex. I at 544–47, 989–91).  The state circuit court denied the claim on the following grounds:

> . . . Defendant simply theorizes in his June 2007 [Rule 3.850] motion that "counsel could not have possibly had the time necessary to review all those documents, investigate, and formulate a defense those documents may support," but points to no specific identifiable deficiency on the part of counsel which would reflect that he was "woefully ill-prepared."[FN 34]

> The Court granted Defendant leave to amend this claim pursuant to <u>Spera v. State</u>, 971 So. 2d 754 (Fla. 2007) on May 3, 2008.  In his amended motion, Defendant asserts that had trial counsel "forced the production of all the documentation, he would have been able to prove Teresa Sandler had forged checks and other documents, i.e. signing the name of Defendant's business partner, Lee Jones, to checks payable to herself, and proven Teresa Sandler had consistently forged the Defendant's name to checks and other documents, and had written checks to herself contrary to her testimony at trial."  Defendant further asserts that "[t]his documentation would have supported a defense that Teresa Sandler had reason to implicate the Schimmels to cover or soften her own illegal activities."  Similarly, Defendant asserts that proper discovery practices on the part of his counsel would have resulted in his counsel knowing "to move for dismissal of [certain counts] for being outside the statute of limitations," and would have proved that Teresa Sandler was the Schimmels' primary bookkeeper contrary to her testimony at trial, and that Defendant was convicted of credit applications completed and signed by Sandler.

> Defendant has failed to demonstrate how additional discovery would have proved these facts as asserted by Defendant.[FN 35]  Defendant appears to assert that his attorney could have shown that Ms. Sandler was embezzling money from the businesses, but does not show how proof of such would demonstrate Defendant's innocence of vendor fraud (by obtaining materials on credit and then failing to pay for said items) or of fraud on his customers (by obtaining deposits purportedly to be used to buy materials and then failing to purchase said materials and complete the buildings as ordered).  It is further not clear how this is relevant to Defendant's culpability as it pertains to the failure to obtain worker's [sic] compensation coverage or remit proper sales tax, or to whether Defendant knowingly destroyed evidence.  Secondly, much of this information was in fact presented to the court.  Ms. Sandler admitted that she signed Defendant's name to checks, and it was clear that Ms. Sandler signed many of the fraudulent credit applications underlying Defendant's convictions.[FN36]  However, her testimony was that she did so at the behest of Defendant; therefore, proof that she signed checks or credit applications with Defendant's or someone else's name does not negate her testimony that she did so

under the direction of her superiors.  In addition, Defendant's claim that proper discovery would have resulted in his counsel realizing he had a valid statute of limitations argument as to certain counts also fails, as he points to no specific document which would have called such a claim to counsel's attention.  In fact, such a claim should be clear from the face of the information, as Defendant acknowledges later in his motion.[FN 37]

> [FN 34] Defendant does raise certain broad claims of deficiency, which he reiterates more specifically in ground four and five.  Those claims will be addressed on the merits *infra*.

> [FN 35] It also cannot be ignored that the Court conducted a two-day hearing regarding the motion to continue trial and whether discovery had been completed in a timely and appropriate manner.  Upon conclusion of the hearing, the Court found that discovery was timely accomplished.  See  Attachment  8,  hearing  on discovery/motion to continue excerpts, pages 7–37, 465–508.

> [FN 36] [reference to excerpts from trial transcript]

> [FN 37] "The bar of the statute of limitations appears on the face of the information as to counts 2 and 22."  See Defendant's motion, page 33.

(Ex. I at 1005–06).

The state court docket reflects that Petitioner was arrested on June 9, 2000 (Ex. B, Progress Docket Printout, entry no. 20).  Defense counsel Jay Williams was appointed on August 23, 2000 (*id.*, entry nos. 34–35).  On October 6, 2000, defense counsel filed a notice of discovery, which bound the defense and the prosecutor to all discovery procedures set forth in Rule 3.220 of the Florida Rules of Criminal Procedure (*id.*, entry nos. 74–75).[12]  The State filed its initial disclosure on October 12, 2000 (*id.*, entry no. 76).  At a hearing on December 14, 2000, the court ordered the defense to inform the State of any documents they needed, and directed the State to respond within ten days (*id.*, entry nos. 97–98).  On April 24, 2001, the State filed another discovery disclosure (*id.*,

---

[12] Among those discovery obligations was  the obligation of the State to disclose, within 15 days after service of the notice of discovery, information including, but not limited to, papers obtained from or that belonged to the defendant.  *See* Fla. R. Crim. P. 3.220(b)(a)(F).  The rule provides that the parties have a continuing duty to promptly disclose any additional material that the party would have been under a duty to disclose at the time of the previous compliance.  *See* Fla. R. Crim. P. 3.220(j).  The trial court may alter the times for compliance with any discovery on good cause shown.  *See* Fla. R. Crim. P. 3.220(k).

entry no. 144).  On May 23, 2001, and June 4, 2001, defense counsel filed a motion for a discovery
conference (*id.*, entry nos. 147, 149).  The conference was held on August 23, 2001 (*id.*, entry no.
174).  The State filed amended discovery disclosures on October 9 and 12, 2001, as well as on
March 21, March 28, April 10, April 11, April 17, April 18, April 19, April 23, April 25, April 26,
April 30, and May 2, 2002 (*id.*, entry nos. 178, 179, 196, 197, 199, 200, 202–05, 208–12, 214, 215,
226, 230, 231).  On May 8, 2002, defense counsel joined in a co-defendant's motion to compel,
motion for discovery, and motion to continue trial (*id.*, entry no. 238).  The court denied the motion
to compel on May 9, 2002 (*id.*, entry nos. 250, 260).  The court granted the motion to continue trial
(*id.*, entry no. 260).  The State filed amended discovery disclosures on May 15 and 17, 2002 (*id.*,
entry nos. 266, 268).  At a hearing on May 9, 2002, the court set a deadline of May 31, 2002, for the
defense to review any remaining discovery at the State Attorney's Office (*id.*, entry nos. 251–52,
284).  The State filed amended discovery disclosures on June 7, 21, 27, and 28, 2002 (*id.*, entry nos.
290, 292, 298, 303).  On July 8–9, 2002, the court held a two-day status conference and evidentiary
hearing on the defense's motion to continue trial (Ex. B at 410–11, 608–921).  Petitioner's counsel
requested a continuance of trial on the ground that the State had disclosed 6,405 documents at the
end of April, 15,647 documents in May, and 40,816 documents in June, and more time was required
for the defense to organize the documents for trial (*id.* at 905–06).  Defense counsel further argued
the defense did not delay in requesting the documents (*id.* at 908–09).  The court found as fact that
17,000 documents were provided to the defense (albeit to a co-defendant's counsel on all
defendants' behalf) in mid 2001, and the "lion's share" of other documents were provided between
April and June 11, 2002, which was over a month before trial (*id.* at 910–11, 917–18).  As to the
documents provided on June 28, the court found that two-and-a-half weeks was sufficient time for
the defense to review them in preparation for trial (*id.* at 918–19).  Trial commenced on July 15,
2002 (Ex. D).

   This record of the parties' discovery activities does not suggest unreasonable conduct by
defense counsel with regard to conducting pre-trial discovery.  Additionally, although Petitioner
alleges defense counsel should have conducted further discovery regarding Ms. Sandler's "back door
dealings with other entities," he failed to show how additional discovery would have proved this
assertion.  Further, Petitioner failed to show how evidence that Ms. Sandler was embezzling money

from the Schimmels' businesses would suggest Petitioner's innocence of vendor fraud, consumer fraud, failure to obtain workers' compensation coverage, failure to remit proper sales tax, or knowingly destroying evidence.  As the state court found, Ms. Sandler admitted at trial that she signed Petitioner's name to checks, and the evidence showed that Ms. Sandler signed many of the fraudulent credit applications underlying the vendor fraud count (Ex. D at 702–60, 782–913).  However, she testified that she did so at the Petitioner's command (*id.*).  Therefore, Petitioner failed to show that defense counsel's failure to conduct discovery on additional "back door dealings" by Ms. Sandler was unreasonable, or that there is a reasonable probability that but for such failure, Petitioner would have been acquitted on one or more of the charges.  Finally, Petitioner's conclusory assertion that defense counsel was ill-prepared for trial falls far short of establishing deficient performance by counsel.  Moreover, this assertion is refuted by the trial transcript.  Therefore, Petitioner failed to demonstrate that the state court's denial of this ineffective assistance of counsel claim was an unreasonable application of Strickland.

       E.      Ground Five:  "Ineffective assistance of trial counsel—failure to investigate impeachment evidence for attacking the credibility of State's star witness Teresa Sandler, thus denying the Petitioner his right to effective counsel, due process & equal protection of the law."

           Ground Six:  "Ineffective assistance of trial counsel—failure to investigate & obtain services of a forensic document examiner to compare & verify signatures on company checks that were forged as Petitioner [sic] by State's star witness Teresa Sandler, thus denying the Petitioner his right to effective counsel, due process & equal protection of the law."

Petitioner contends defense counsel was ineffective for failing to investigate evidence that would have impeached Teresa Sandler's credibility (doc. 9 at 17–19; doc. 10 at 19–20).  Specifically, Petitioner asserts counsel should have investigated the fact that Sandler regularly wrote checks to herself without Petitioner's knowledge, and should have hired a forensic document examiner to compare and verify signatures on company checks to show that Sandler forged Petitioner's signature (doc. 9 at 18–20).  He asserts counsel also should have investigated the fact that Ms. Sandler installed the computer system at Petitioner's office, because this would have rebutted the State's argument that Ms. Sandler was a student of Petitioner's fraud (doc. 10 at 20).  Petitioner also asserts counsel should have investigated Sandler's "addictive lifestyle," cohabitation

with Patrick Bish, and "backdoor dealings" with Charles Dyer (*id.*). Petitioner contends this evidence would have undermined Sandler's credibility, because it would have refuted her testimony that (1) it was against company policy for her to endorse company checks made payable to herself, (2) she never signed Petitioner's name to a check unless she was first given permission to do so, and (3) she never stole or embezzled any money from any business owned by the Schimmels (doc. 9 at 18, 20–21; doc. 10 at 21–22).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of either of these claims was contrary to or an unreasonable application of clearly established federal law (doc. 37 at 27–30).

1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised these claims as Grounds Four and Five in his Rule 3.850 motion (Ex. I at 548–55). The state circuit court denied the claims on the following grounds:

> Defendant neither asserts nor demonstrates that proof that Sandler engaged in these acts would have exonerated him of any of the crimes of which he was convicted, but rather argues only that such proof would have impacted her credibility. Defendant has further failed to demonstrate that these matters would have been admissible at his trial, as it appears that such evidence would have been collateral to the issues pertinent at trial, even had counsel investigated and attempted to summon a handwriting analyst to testify to the purported forgeries. <u>See</u> <u>Lawson v. State</u>, 651 So. 2d 713, 715 (Fla 2d DCA 1995) ([A] witness' answer during cross-examination to a nonmaterial collateral matter is conclusive and cannot be impeached by normal means of impeachment, including contradictory testimony by another witness").

> Additionally, the record demonstrates that Sandler was thoroughly cross-examined by both counsel for Defendant and for co-defendant Debbie Schimmel.[FN 38] The record also reveals that Sandler acknowledged that she had signed Defendant's name to certain checks "when he asked [her] to."[FN 39] Sandler was also asked about writing checks to "borrow" money from the Schimmels. When she responded that she did not remember whether she wrote checks to herself or submitted them to Defendant for signature, Defendant's trial counsel informed the court that his "client had asked [him] to inquire about certain specific bad acts, [but] that based on the Court's most recent ruling," he felt those matters would not be admissible.[FN 40] The Court finds no fault with counsel's reasoning, and

Defendant has demonstrated none.  Lastly, the Court was also clearly aware at the time of trial that Sandler was a co-defendant in the instant case,[FN 41] and as Defendant points out, was originally charged with "several counts of theft and racketeering."[FN 42]]  The Court was furthermore aware that Sandler anticipated that her plea deal and testimony in Defendant's trial would be of some benefit to her at sentencing.[FN 43]  Defendant has failed to demonstrate that counsel was deficient or that he was prejudiced by counsel's alleged deficiencies with regard to Sandler, and he is not entitled to relief on the basis of his fourth and fifth claims.

[FN 38, 39] [references to excerpts from trial transcript]

[FN 40] [reference to excerpts from trial transcript]  The Court specifically ruled during the course of the examination of Sandler that specific bad acts, not constituting criminal convictions, were not admissible as impeachment.

[FN 41, 42, 43] [references to excerpts from trial transcript and Petitioner's Rule 3.850 motion]

(Ex. I at 1007–08).

Deference is due to the state court's findings on matters of state law.  *See* <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Therefore, this court is bound by the state court's determination that evidence of Ms. Sandler's specific acts of misconduct described by Petitioner (that is, Sandler regularly wrote checks to herself without Petitioner's knowledge, she forged Petitioner's signature, she installed the computer system at Petitioner's office, she had an "addictive lifestyle," she cohabitated with a convicted felon who perpetrated crimes against Petitioner, and she had "backdoor dealings" with Charles Dyer) would not have been admissible to impeach her testimony.[13]

Additionally, as the state court found, Ms. Sandler was thoroughly cross-examined by both counsel for Petitioner and Mrs. Schimmel (Ex. D at 854–913).  During the cross-examination, the

---

[13] Florida Statutes section 90.610 provides that only conduct which results in a criminal conviction is admissible to prove a witness's bad character.  Fla. Stat. § 90.610; Charles W. Ehrhardt, <u>West's Florida Practice Series</u> § 610.8 (2011 ed.) (citing Florida cases).  A witness's credibility may not be attacked by proof that the witness has committed specific acts of misconduct that bear on the truthfulness of the witness; however, acts of misconduct may be admissible to prove bias or interest, or when the direct examination has "opened the door."  <u>Ehrhardt</u>, *supra* (citing Florida cases).

trial court ruled that specific acts of misconduct by Ms. Sandler not constituting criminal convictions were not admissible for impeachment unless the acts showed bias or interest, or the State opened the door (*id.* at 863–67. 878–79, 892–93).  The defense brought out evidence that showed bias or interest, for example, evidence that Ms. Sandler was originally charged as a co-defendant with eight counts of theft by fraud and one RICO count, but the RICO count was dismissed after Ms. Sandler decided to become a witness for the State and negotiated a plea deal of a non-incarcerative sentence on the theft counts (*id.* at 854–57).  Ms. Sandler admitted on cross-examination that she had signed Petitioner's name to certain checks, but clarified she did so   "when he asked [her] to" (*id.* at 903–05).  Defense counsel then asked Ms. Sandler whether she wrote checks to "borrow" money from the Schimmels, and she responded that she did not remember (*id.* at 904–05).  Defense counsel made a tactical decision not to attempt to impeach her with specific instances of check-writing "based on the Court's most recent ruling" (*id.* at 904–05), which was a reasonable decision in light of court's previous ruling.

Petitioner failed to show that defense counsel's failure to investigate the "impeachment evidence" he identified, or counsel's failure to hire a forensic document examiner, was unreasonable.  He additionally failed to show a reasonable probability of a different outcome at trial if counsel had engaged in such investigative efforts.  Therefore, he failed to establish that the state court's denial of the claim was an unreasonable application of <u>Strickland</u>.

F.    <u>Ground Seven: "Ineffective assistance of trial counsel—failure to properly preserve for the purpose of appeal the Petitioner's motion for judgment of acquittal as to the State's evidence that was legally insufficient to prove the Petitioner knowingly destroyed evidence, thus denying the Petitioner his right to effective counsel, due process & equal protection of the law."</u>

Petitioner contends defense counsel was ineffective for failing to argue in his motion for judgment of acquittal that the evidence was insufficient to support a conviction for destruction of evidence because (1) the State failed to prove the nature of the documents destroyed or that the documents related to or were material to an ongoing criminal investigation, (2) the State's case was based upon a "pyramiding of inferences," and (3) the evidence was purely circumstantial and was not inconsistent with any reasonable hypothesis of innocence (doc. 9 at 21–22; doc. 10 at 23–26).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (doc. 37 at 30–33).

      1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Six in his Rule 3.850 motion (Ex. I at 555–58).  The state circuit court denied the claim on the ground that defense counsel did move for a judgment of acquittal on the charge of destruction of evidence, and counsel also joined in the motion made by co-defendant's counsel, in which he argued that the State's case presumed knowledge of materiality, and argued that one had to "pyramid . . . inferences" to find proof that material information was destroyed (Ex. I at 1008–10).  The court concluded that Petitioner failed to demonstrate that a more detailed motion for judgment of acquittal would have been properly granted had counsel made additional argument, or that additional argument was necessary to properly preserve the issue for appellate review (*id.*).

The trial transcript supports the state court's finding that defense counsel made a motion for judgment of acquittal and joined in the motion made by co-defendant's counsel (Ex. D at 2322–2414, 3271–2382).  The transcript shows that defense argued that the State's case presumed knowledge of materiality, and that one had to "pyramid . . . inferences" to find proof that material information was destroyed (Ex. D at 2336–40, 3271).  The record thus refutes the factual basis of Petitioner's claim.

Further, the transcript shows that there was direct evidence as to each of the two elements of the crime, (1) Petitioner  knew that an investigation by a law enforcement agency or prosecuting authority was pending or about to be instituted, and (2) he altered, destroyed, concealed, or removed a record or document with the purpose of impairing its availability in the investigation.  *See* Fla. State. § 918.13.  The trial transcript shows the State introduced direct evidence that a search warrant had been served, the Schimmels were aware of the investigation, Ms. Sandler observed the Schimmels burning documents, and Ms. Sandler overheard Ms. Schimmel state that she "could not believe what they missed" (Ex. D at 137–92, 841–44).  It was therefore reasonable for the state court

to conclude that Petitioner failed to show a reasonable probability of a different outcome, that is, that a motion for judgment of acquittal would have been properly granted, had counsel made the particular arguments identified by Petitioner.  Moreover, as previously noted, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal.  *See* <u>Purvis</u>, 451 F.3d at 739.  Therefore, Petitioner's argument that defense counsel prejudice his success on appeal is insufficient to establish prejudice under <u>Strickland</u>.

Petitioner failed to show that the state court's denial of his claim was an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to habeas relief on this claim.

G.      <u>Ground Eight:  "Ineffective assistance of trial counsel—failure to move to dismiss or object to specific counts of the information that were time-barred by the statute of limitations, thus denying the Petitioner his right to effective counsel, due process & equal protection of the law."</u>

<u>Ground Nine:  "Ineffective assistance of trial counsel—failure to move to dismiss or object to specific counts of the information that were time-barred by the statute of limitations as to Count 56, thus denying the Petitioner his right to effective counsel, due process & equal protection of the law."</u>

In Ground Eight, Petitioner claims that defense counsel was ineffective for failing to object or move to dismiss certain counts of the information which were time-barred by the statute of limitations (doc. 9 at 23–26; doc. 10 at 26–28).  Specifically, he alleges counsel should have moved to dismiss the organized fraud counts, Counts 2 and 22, on the ground that they were barred by the limitations period applicable to theft charges, and the record did not support application of the "continuing offense doctrine" (*id.*).  In Ground Nine, Petitioner contends counsel should have made a similar statute of limitations argument with regard to Count 56, workers' compensation fraud (doc. 9 at 26–27; doc. 10 at 26–28).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of these claims was contrary to or an unreasonable application of clearly established federal law (doc. 37 at 33–37).

1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised these claims as Grounds Seven and Eight in his Rule 3.850 motion (Ex. I at 558–65).  The state circuit court denied the claims on the following grounds:

> Pursuant to section 775.15(2)(a) and (4), Florida Statutes, organized fraud[FN 47] must be charged within four years of the date of the commission of the crimes, which, in the case of statutes in which there is a clear legislative purpose to prohibit a continuing course of conduct, occurs when the date of the "completion of the course of conduct or the defendant's complicity therein is terminated."  The course of conduct alleged by the State in count two was alleged to have been completed "**on or about** May 14, 1998," and in count 22, the course of conduct was alleged to have been completed on or about August 7, 2000" (emphasis added).[FN 48]

> The evidence presented at trial indicated that, at least until July 1998, Defendant engaged in fraud perpetrated on suppliers and vendors.[FN 49]  The third amended information was filed on May 17, 2002, therefore, count two was filed within the applicable four-year period.  Count 22, which alleges that the completion of the acts in question occurred on or about August 7, 2000, is clearly charged within the applicable time period.

> Further, Defendant's claim that the State did not show an ongoing course of conduct is without merit.   "A scheme to defraud in violation of section 817.034(4)(a)1 is a true continuing offense."  Young v. Moore, 820 So. 2d 901, 902 (Fla. 2002).  Although Defendant makes a vague assertion that "each of [his] crimes were separated in time and unrelated to one another," the evidence at trial does not support this claim.  The evidence at trial supported the Court's finding beyond a reasonable doubt that Defendant engaged in an ongoing systematic scheme to defraud suppliers and customers, using more than 10 interrelated "corporations."[FN 50] . . . Therefore, Defendant's claim that counsel was deficient for failing to move to dismiss these counts based on the statutes of limitations is without merit.

> With regard to Count 56, worker's [sic] compensation fraud, the information alleges that the course of conduct concluded on or about May 5, 1996.  Defendant is correct that worker's [sic] compensation fraud is a third degree felony; therefore a three-year statute of limitations was applicable at the time of the offense.  See Fla. Stat. §§ 440.105(4)(a)3, and 775.15(2).  However, the Court is persuaded by the State's argument that the proof demonstrated that Defendant's conduct relevant to this count continued until June 7, 1996,[FN 51] and that the offense was discovered at the time of Teresa Sandler's statement in August 2001.[FN 52]  Therefore, section 775.15(3), Florida Statutes, is applicable; it provides in pertinent part:

> If the period prescribed in subsection (2) has expired, a prosecution
> may nevertheless be commenced for:
> (a) Any offense, a material element of which is either fraud or a
> breach of fiduciary obligation, within 1 year after discovery of the
> offense by an aggrieved party or by a person who has a legal duty to
> represent an aggrieved party and who is himself not a party to the
> offense, but in no case shall this provision extend the period of
> limitation otherwise applicable by more than 3 years.

Defendant has failed to demonstrate that counsel would have been successful had he challenged these counts on the basis of the statute of limitations, and he is not entitled to relief on this basis.

> [FN 47] If the value of the property obtained has an aggregate
> value of $50,000 or more, it is a first degree felony.  Fla. Stat.
> § 817.034.

> [FN 48] [reference to third amended information]

> [FN 49] [reference to trial exhibit 25 and excerpts from trial
> transcript]

> [FN 50] [reference to excerpts from trial transcript]

> [FN 51] [reference to State's Second Amended Statement of
> Particulars, State's Notice of Intent to Use Summary Proof II, with
> attached copy of chart of taxable sales by Petitioner's business
> entities, and excerpts from trial transcript]

> [FN 52] [reference to copy of sworn statement of Teresa
> Sandler taken by prosecutor on August 18, 2001]

(Ex. I at 1010–13).

The trial transcript supports the state court's factual finding that Petitioner engaged in fraud perpetrated on suppliers and vendors until at least July of 1998 (Ex. D at 619–32; Ex. I at 2573–75). The transcript also supports the court's finding that Petitioner's conduct relevant to the workers' compensation fraud count at issue, Count 56, continued until June 7, 1996 and was discovered at the time of Teresa Sandler's statement to the prosecutor and an agent of the Florida Department of Law Enforcement on August 18, 2001 (Ex. B at 228–317, 382–83, Ex. D at 1526–70, 1658–1729).

The record additionally supports the state court's finding that the third amended information was filed May 17, 2002 (Ex. B at 98–120).

This court must defer to the state court's determinations on matters of Florida law, including (1) the organized fraud statute under which Petitioner was charged had a clear legislative purpose to prohibit a continuing course of conduct, (2) the trial evidence demonstrated an "ongoing course of conduct" under the organized fraud statute as to both supplier fraud and customer fraud, (3) the organized fraud counts, Counts 2 and 22, were charged within the applicable time period, (4) the provision of the limitations statute providing for an extension of the limitations period applied to Count 56, a workers' compensation fraud count, and (5) the conduct underlying Count 56 was charged within the applicable limitations period.

In light of the facts and the state court's determination that the counts at issue were charged within the statute of limitations period, Petitioner failed to show that counsel had a meritorious basis for seeking dismissal of Count 2, 22, or 56 on statute of limitations grounds. Therefore, the state court reasonably applied <u>Strickland</u> in concluding that Petitioner failed to show deficient performance by counsel or resulting prejudice. Accordingly, he is not entitled to habeas relief on Ground Eight or Nine.

> H.    <u>Ground Ten: "Ineffective assistance of trial counsel—failure to move for judgment of acquittal on the basis that after the state entered a nolle prosequi to the underlying counts of theft, the evidence became legally insufficient to convict the Petitioner of RICO & organized fraud, thus denying the Petitioner his right to effective counsel, due process & equal protection of the law."</u>

Petitioner contends defense counsel was ineffective for failing to move for a judgment of acquittal "on the basis that after the State entered a nolle prosequi to the underlying counts of theft, the evidence became legally insufficient to convict the Petitioner of RICO and organized fraud" (doc. 9 at 28; doc. 10 at 28–30). Petitioner asserts the parties realized during trial that convictions of the organized fraud counts and the theft counts violated double jeopardy principles; therefore, the state announced a nolle prosequi as to the theft counts after the close of the evidence and before the judge rendered a verdict (*id.* at 28). Petitioner argues counsel should have moved for a judgment of acquittal on the organized fraud and RICO counts, on the ground that (1) the information failed to identify specific victims as to those counts, and (2) the State's decision to abandon the underlying

counts of theft, "removed all testimony" regarding the theft counts, thereby rendering the evidence legally insufficient to conviction him of RICO and organized fraud (*id.* at 28–30).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (doc. 37 at 37–40).

### 1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

### 2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Nine in his Rule 3.850 motion (Ex. I at 566–69).  The state circuit court denied the claim on the ground that Petitioner cited no authority which dictated that the State's decision to proceed under the theory of organized fraud only, rather than on the individual theft counts, had the effect of "removing" any evidence from consideration by the Court, nor had he demonstrated by provision of any legal authority that a motion for judgment of acquittal would have been successful on such grounds (Ex. I at 1013).  The court further determined that Petitioner's claim that the state's election to proceed only on the organized fraud counts was somehow inappropriate was without merit (*id.*).

Petitioner failed to show that defense counsel had a legally supportable argument for seeking a judgment of acquittal on the ground that the State failed to identify specific victims of the RICO and organized fraud charges in Counts 1, 2, and 22 of the third amended information.  The third amended information and statement of particulars filed by the State on May 17, 2002, along with the affidavits of probable cause provided to the defense, sufficiently notified the defense that the acts underlying the RICO and organized fraud charges in Counts 1, 2, and 22 were the specific acts of vendor/supplier fraud and customer fraud alleged in Counts 3 through 21 and 23 through 55 (*see* Ex. B at 98–120, 123–66, 345–46).  Additionally Petitioner failed to provide any legal authority supporting an argument that the State's announcing a nolle prosequi of the grand theft counts to avoid a double jeopardy violation[14] rendered the evidence supporting the theft counts legally

---

[14] *See* <u>Pizzo v. State</u>, 945 So. 2d 1203 (Fla. 2006); <u>Pineda v. State</u>, 3 So. 3d 1289, 1289–90 (Fla. 4th DCA 2009) (reversing conviction for lesser offense of grand theft where convictions for both organized scheme to defraud and grand theft were based upon common factual allegations and, therefore, convictions for both offenses violated double

insufficient to support the organized fraud convictions.  If the fact finder had found insufficient evidence to support the grand theft counts, then defense counsel would have had an argument that the evidence was insufficient to support the organized fraud convictions based upon the same conduct.  *See* Louberti v. State, 895 So. 2d 479 (Fla. 4th DCA 2005).  However, the fact finder made no such determination in the instant case.  Petitioner thus failed to show defense counsel had a legally supportable argument for seeking a judgment of acquittal on that basis.  Counsel's performance may not be deemed deficient for failing to make a nonmeritorious argument.  *See* Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) ("It is axiomatic that the failure to raise non-meritorious issues does not constitute ineffective assistance.").  Moreover, Petitioner failed to show a reasonable probability that a motion for judgment of acquittal would have been granted had counsel asserted either of the grounds identified by Petitioner.  Therefore, the state court's denial of Petitioner's ineffective assistance of counsel claim was not an unreasonable application of Strickland.

> I.     Ground Eleven:  "Ineffective assistance of trial counsel—failure to move for arrest of judgment on the basis that after the State entered a nolle prosequi to the underlying counts of theft, the trial court no longer had jurisdiction to impose restitution stemming from those counts, thereby rendering the evidence legally insufficient to prove the element of $50,000.00 value of the property obtained by fraud essential for a conviction of a first-degree felony, thus denying the Petitioner his right to effective counsel, due process & equal protection of the law."

Petitioner contends defense counsel was ineffective for failing to move for arrest of judgment on the basis that after the State entered a nolle prosequi to the counts of grand theft, (1) the Court no longer had jurisdiction to impose restitution stemming from those counts, and (2) the evidence was legally insufficient to prove the $50,000.00 property value element essential to convict of a first degree felony (doc. 9 at 31–33; doc. 10 at 30–32).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (doc. 37 at 40–45).

_____

jeopardy); Saddler v. State, 921 So. 2d 777 (Fla. 1st DCA 2006) (reversing conviction for organized fraud where defendant was convicted of organized fraud and grand theft based upon common allegations, and all counts were third degree felonies).

      1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Ten in his Rule 3.850 motion (Ex. I at 570–72). The state circuit court denied the claim on the ground that Petitioner provided no authority supporting his assertion that the nolle prosequi of the theft counts somehow deprived the trial court of the evidence regarding those thefts as it applied to the charge of organized fraud, or deprived the court of the ability to impose restitution on behalf of the affected individuals (*id.* at 1014).

For the reasons discussed *supra* in Ground Ten, Petitioner failed to show a meritorious legal basis for the argument that the nolle prosequi of the grand theft counts rendered the evidence supporting those counts, including evidence of the amounts of property loss suffered by the victims, legally insufficient to support the RICO or organized fraud counts. Further, Petitioner failed to show that counsel had a meritorious basis for arguing that the nolle prosequi of the grand thefts counts deprived the trial court of jurisdiction to impose restitution for the RICO and organized fraud convictions based upon the evidence of victim loss adduced at trial. Therefore, the state court's denial of this ineffective assistance of counsel claim was not an unreasonable application of Strickland.

    J.    Ground Twelve: "Abuse of discretion—State of Florida appellate courts repeatedly abuse their authority to *per curiam affirm* without opinion denying the Petitioner the right to seek review from the State's highest court, thus denying due process & equal protection of the law."

Petitioner contends the First DCA violated his constitutional rights to due process and equal protection by affirming the lower court's denial of his Rule 3.850 motion without written opinion, thereby depriving him of the right to seek further review by the Florida Supreme Court (doc. 9 at 33–34; doc. 10 at 32–34).

Respondent contends Petitioner failed to present this claim to the state courts; therefore, it is unexhausted and procedurally defaulted (doc. 37 at 7–8, 14). Respondent additionally contends this claim presents only a state law issue and is therefore not cognizable in federal habeas (*id.* at 13–14). Respondent also argues Petitioner's claim is without merit, because he failed to show the existence of a federal constitutional right to a written opinion by an appellate court (*id.* at 14–15).

Due process violations during state post-conviction proceedings do not form the basis of habeas relief.  *See* Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009); Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004).  The habeas statute permits federal courts to grant habeas relief to state prisoners on the ground that they are "in custody pursuant to the judgment of a State court" in violation of federal law.  28 U.S.C. § 2254(a).  State post-conviction proceedings are not the "judgment" that resulted in the prisoner's detention.  *See* Carroll, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself . . . .").  Post-conviction proceedings are instead "civil in nature and are not part of the criminal proceeding itself."  Pennsylvania v. Finley, 481 U.S. 551, 556–57, 107 S. Ct. 1990, 1994, 95 L. Ed. 2d 539 (1987).  Therefore, procedural violations during state post-conviction proceedings are "issues unrelated to the cause of the petitioner's detention." Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987).  As such, they cannot form the basis for habeas relief.  *See, e.g.*, Carroll, 574 F.3d at 1365 (holding that a failure to hold an evidentiary hearing in a state post-conviction proceeding was not a basis for habeas relief); In re Rutherford, 437 F.3d 1125, 1127 (11th Cir. 2006) (finding insufficient for habeas relief the petitioner's claim that the state post-conviction court denied him due process by failing to provide mental health records of a person the petitioner alleged had actually committed the crime) (citation omitted); Quince, 360 F.3d at 1262 (rejecting a habeas petition, which alleged that the state judge presiding over the petitioner's post-conviction hearing denied the petitioner due process by not recusing himself, because the claim did not relate to the petitioner's conviction).

The due process and equal protection violations alleged by Petitioner in Ground Twelve occurred during a state post-conviction proceeding, not during his criminal trial.  The process afforded Petitioner during that proceeding, including appellate review of the lower court's denial of his post-conviction motion, therefore had no bearing on the judgment that led to his conviction and sentence.  A writ of habeas corpus is not the proper remedy for this alleged wrong.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Edwin G. Buss as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (doc. 9) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

3.      That the clerk of court be directed to close this case and the companion case, Case No. 3:11cv32/LAC/EMT.

At Pensacola, Florida, this 24ᵗʰ day of January 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).